**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THE CHARTER OAK FIRE INSURANCE**
**COMPANY,**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **1:20-CV-01408** |
| **vs.** | | **(MAD/DJS)** |

**ERIE INSURANCE COMPANY,**

|  |  |
|---|---|
| | **Defendant.** |

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **REID & ASSOCIATES** | **MEG R. REID, ESQ.** |
| P.O. Box 2996 | **AMY C. GROSS, ESQ.** |
| Hartford, Connecticut 06104 | |
| Attorneys for Plaintiff The Charter | |
| Oak Fine Insurance Company | |
| | |
| **BURKE, SCOLAMIERO** | **JEFFREY E. HURD, ESQ.** |
| **& HURD, LLP** | **STEVEN V. DEBRACCIO, ESQ.** |
| 7 Washington Square, PO Box 15085 | |
| Albany, New York 12212 | |
| Attorneys for Defendant Erie | |
| Insurance Company | |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

In this declaratory judgment action, Plaintiff The Charter Oak Fire Insurance Company

("Charter Oak") seeks a declaration that (1) Defendant Erie Insurance Company ("Erie") is

obligated to defend nonparty M+W U.S., Inc. ("M+W") in an underlying lawsuit; (2) Erie's

coverage obligations to M+W in connection with the underlying action are primary and

non-contributory; and (3) Erie is obligated to reimburse Charter Oak for the costs it has already

incurred in defending M+W in the underlying action, including its pursuit of a cross-claim for

indemnification.  *See* Dkt. No. 1.  Currently before the Court is Charter Oak's motion for summary judgment.  *See* Dkt. No. 16.

For the reasons stated below, Charter Oak's motion for summary judgment is granted.

## II. BACKGROUND

Charter Oak is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  Erie is a Pennsylvania corporation with its principal place of business in Erie, Pennsylvania.  Charter Oak issued a policy providing M+W—an engineering and construction group—with coverage for any accidental bodily injury that took place during the policy period of April 30, 2013 to April 30, 2014 (the "Charter Oak Policy").  *See* Dkt. Nos. 16-4, 16-5, 16-6, 16-7.  The Charter Oak Policy contains an "OTHER INSURANCE" amendment that provides that coverage under the Charter Oak Policy "is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy."  Dkt. No. 16-4 at 40.

Erie issued a policy providing Arrow Sheet Metal Works, Inc. ("Arrow")—a sheet metal contractor—with coverage for any accidental bodily injury that took place during the policy period of February 28, 2013 to February 28, 2014 (the "Erie Policy").  *See* Dkt. No. 16-8.  The Erie Policy names M+W as an additional insured, *see id.* at 10-12, and contains an endorsement providing:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional

insured(s) at the location(s) designated above.

*Id.* at 134.  The Erie Policy also provides, as relevant here:

> **a. Primary Insurance**
> This insurance is primary except when Paragraph **b**. below applies.
>                                    * * *
> **b. Excess Insurance**
> 1) This insurance is excess over:
> a) Any of the other insurance, whether primary, excess, contingent
> or on any other basis:
> i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar
> coverage for "your work";

*Id.* at 109, 136.

In October 2013, M+W entered into a "Major Subcontract Agreement" with Arrow (the "Subcontract") in connection with a construction project in Albany, New York (the "Project"). *See* Dkt. No. 16-14.  Pursuant to the Subcontract, Arrow was required to "procure, pay for and thereafter maintain such insurance as will protect against claims for bodily injury or death, or damage to property, which may arise out of operations by Subcontractor or any sub-Subcontractor or by anyone employed by any of them, or by anyone for whose acts any of them may be liable," *id.* at 16, and to name M+W as an additional insured, *see id.* at 16-17.  The Subcontract also required Arrow to indemnify, defend, and hold harmless M+W and the owner of the Project from and against any claim arising out of or relating to the performance of Arrow's work by Arrow or those for whom Arrow is responsible under the Subcontract.  *See id.* at 11, 13.  Finally, the Subcontract states that, "[i]n the event of any breach or default by [Arrow] arising out of or relating to this Agreement, [M+W] shall be entitled, whether or not a suit, action, or arbitration proceeding is instituted, to recover all its costs and expenses incurred in connection therewith, including without limitation attorneys' fees and expert witness fees."  *Id.* at 21.

In February 2014, an employee of a subcontractor to Arrow (the "Claimant") was injured

while working at the project site.  In March 2015, the Claimant commenced an action against M+W, Arrow, and others (the "Underlying Action"), alleging that his injury was the result of negligence and a violation of the New York State Labor Laws.  M+W asserted a cross claim against Arrow for indemnification in the Underlying Action.  Ultimately, the Underlying Action was settled, with no finding of liability and no payment being made by M+W, although M+W continues to litigate its cross claim against Arrow seeking indemnification.

In May 2014, Charter Oak notified Erie of the Claimant's accident and demanded Erie defend and indemnify M+W in the Underlying Action as an additional insured under the Erie Policy.  *See* Dkt. No. 16-15.  Erie denied the tender.  *See* Dkt. No. 16-16.  Charter Oak tendered notice to Erie twice more, in March 2017 and May 2018, *see* Dkt. Nos. 16-17, 16-19, and Erie continued to deny the tender, *see* Dkt. Nos. 16-18, 16-20.  Charter Oak thereafter commenced the present action, alleging that—because of Erie's refusal to fulfill its coverage obligations to M+W—Charter Oak has been incurring costs providing a defense to M+W in the Underlying Action, including pursuit of M+W's cross-claim for indemnification from Arrow.

### III. DISCUSSION

Charter Oak argues that it "is entitled to a declaration that Erie has a duty to defend M+W in the Underlying Action because M+W is specifically scheduled as an additional insured under the Erie Policy, and the allegations of the underlying complaint fall within the coverage available under the Erie Policy."  Dkt. No. 16-1 at 11.  Charter Oak argues that the Erie Policy's coverage is primary to the Charter Oak Policy's coverage because none of the conditions listed in the Erie Policy that would render that Policy excess are present here.  *See id*. at 15.  Finally, Charter Oak argues that Erie's obligation includes all the costs Charter Oak has incurred in pursuit of M+W's defense, including M+W's cross-claim against Arrow for indemnification.  *See id.*  In opposition,

Erie "concedes that M+W . . . was listed on [Erie]'s policy as an additional insured and that the allegations in the underlying [complaint] . . . trigger[ed] a duty to defend M+W," but argues that the parties should split the cost of M+W's defense, either equally or pro rata, because "both policies are excess coverage, and thus, both cancel each other out."  Dkt. No. 17-5 at 5, 10.  Erie also argues that Charter Oak is not entitled to counsel fees for (1) the indemnification cross claim against Arrow, or (2) any defense costs after Charter Oak filed an untimely summary judgment motion.  *See id.* at 11-12.[1]

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of

---

[1] Although Erie asserts that it has raised "triable issues of material fact" throughout its memorandum of law, Dkt. No. 17-5 at 2, 5, 6, it does not actually identify any disputed issues of fact, only disagreements as to the law.

material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e).

**B.    Erie's Policy: Excess or Primary**

"In insurance contracts the term 'other insurance' describes a situation where two or more insurance policies cover the same risk in the name of, or for the benefit of, the same person." *Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686–87 (1999) (hereinafter, "*Great Northern*") (citation omitted). "When an insured has more than one potentially applicable policy for a claim, courts determine the insurers' obligations to the insured by applying a body of law developed to resolve 'other insurance' disputes." *Id.* at 687. If the two policies contain irreconcilable "other insurance" clauses—*i.e.*, both policies are excess with respect to each other—the clauses "cancel each other out and the companies must apportion the costs of defending and indemnifying . . . on a pro rata basis." *Id.* On the other hand, if one policy is primary with respect to the other policy, the primary policy must pay up to the limits of its coverage before the secondary policy's coverage becomes effective. *See id.*

The parties agree that Erie has a duty to defend M+W in the Underlying Action, *see* Dkt. No. 17-5 at 5, and that Charter Oak's Policy is excess with respect to Erie's Policy under Charter Oak's Policy's "other insurance" clause, *see* Dkt. No. 16-4 at 40 (providing that coverage under the Charter Oak Policy "is excess over any of the other insurance, . . . that is available to the insured when the insured is added as an additional insured under any other policy"). However, whether Erie's Policy is excess with respect to Charter Oak's Policy under Erie's Policy's "other

insurance" clause is disputed.  Erie argues that its coverage is excess under Section IV(4)(b)(a)(i) of the Erie Policy, which reads, as relevant here, "[t]his insurance is excess over: (a) [a]ny of the other insurance, whether primary, excess, contingent or on any other basis: (i) [t]hat is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work.'"  Dkt. No. 16-8 at 109.[2]  Erie does not argue that Charter Oak's Policy is fire, extended coverage, builder's risk, or installation risk insurance.  Rather, Erie argues that the phrase "similar coverage for your work" covers "the entirety of the prime contract" between M+W and Arrow and therefore encompasses Claimant's work for Arrow's subcontractor.  *See* Dkt. No. 17-5 at 9.  In opposition, Charter Oak argues that the New York Court of Appeals considered the precise language at issue here in *Great Northern* and held that such language applied "only to first-party property coverage for commercial work, not for a third-party liability policy" like Charter Oak's Policy.  Dkt. No. 18 at 7.

In *Great Northern*, the New York Court of Appeals examined an "other insurance" clause in a case nearly identical to the one present here.  In *Great Northern*, the defendant insurance company argued that the "other insurance" clause it its commercial general liability policy rendered that policy's coverage excess to the third-party liability coverage provided by the plaintiff insurance company's homeowner's policy, "such that the two insurers must bear pro rata shares of the cost of defending and indemnifying a homeowner in the event that a third party is injured while performing construction renovation work on the home."  *Great Northern*, 92 N.Y.2d at 684.  The defendant's "other insurance" clause stated, "[t]his insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis: (1) [t]hat is

---

[2] The phrase "your work" is defined in the Eire Policy as "[w]ork or operations performed by you or on your behalf."  Dkt. No. 16-8 at 113.  As relevant here, "you" and "your" refers to M+W (as an additional insured on the policy).

Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work.'" *Id.* at 686.  In examining the meaning of "your work," the court determined that it could not be severed "from the unambiguous antecedent enumerated coverages"—namely, "fire, extended coverage, builders risk, installation risk or similar coverage"—which were all examples of "first-party property insurance." *Id.* at 687-88.  Because "this phrase strictly encompasse[d] first-party property insurance," the court held that it "d[id] not include a homeowner's third-party liability policy." *Id.* at 688.  To hold otherwise, the court concluded, "would confuse the important contractual and practical distinctions between these two coverages" and impermissibly "expand[] the excess insurance definition to include any coverage that was similar to that afforded under any portion of the [defendant's] policy." *Id.* at 688-89.

The same reasoning applies to the nearly identical "other insurance" clause at issue here. As in *Great Northern*, the "your work" portion of the clause cannot be read in isolation from the remainder of the clause, which enumerates the exact same first-party property coverage types as in *Great Northern*.  Charter Oak's Policy is a third-party liability policy, and the risk at issue in the Underlying Action triggers only third-party indemnification aspects of Charter Oak's Policy. Thus, the Erie Policy's excess insurance clause—which encompasses only first-party property coverage—is not triggered by Charter Oak's third-party liability policy and the Erie Policy is primary with respect to the Charter Oak Policy.  Erie argues that *Great Northern* is distinguishable and "left open" resolution of the present case because, "here, the [C]ourt is dealing with two commercial policies," while *Great Northern* involved a homeowner's policy. Dkt. No. 17-5 at 10.  However, as Charter Oak argues, *see* Dkt. No. 18 at 8, *Great Northern*'s holding turned on the nature of the types of coverage—*i.e.* first-party property insurance or third-party liability insurance—and there is nothing in *Great Northern*'s reasoning that suggests

that a distinction should be drawn between homeowner's policies and commercial policies.

Accordingly, the Court holds that Erie's obligation to defend M+W is primary to Charter Oak's obligation, and Erie must pay up to the limits of its policy's coverage before Charter Oak's secondary policy's coverage becomes effective.

## C.  Charter Oak's Entitlement to Certain Defense Costs

Relying on *Perchinsky v. State*, 232 A.D.2d 34 (3d Dep't 1997), Erie argues that it should not be required to reimburse Charter Oak for legal fees incurred in pursuit of M+W's cross claim against Arrow for indemnification.  Specifically, Erie asserts that those fees are "clearly governed by the general rule limiting an award for counsel fees to the defense of the claim indemnified against and not extending such award to legal services rendered in establishing the right to indemnification."  Dkt. No. 17-5 at 11 (quoting *Perchinsky*, 232 A.D.2d at 39).  *Perchinsky*, however, is distinguishable from the present case inasmuch as the court, in making the above statement, was referring to a party seeking to recover the cost to enforce a contractual indemnification right against the contractual indemnitor itself.  *See Perchinsky*, 232 A.D.2d at 39-40.  The *Perchinsky* court, however, explicitly held that "seeking to enforce . . . contractual indemnification rights against the indemnitor not for the costs of enforcing the indemnification claim, but merely for the costs of pursuing 'defensive' third-party claims against parties other than the contractual indemnitor" was permissible.  *Id.* at 40.  Here, Charter Oak does not seek to recover the cost of enforcing its contractual indemnification right against Erie itself, but instead permissibly seeks the cost of pursuing a defensive claim against Arrow—a party other than the contractual indemnitor.  *See Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 275 (S.D.N.Y. 2020) (finding the defendant insurer's duty to defend covered the additional insured's cross claim for indemnification against the defendant insurer's named insured

9

in the underlying action); *Jenel Mgmt. Corp. v. Pacific Ins. Co.*, 55 A.D.3d 313, 313 (1st Dep't 2008).

Erie also argues that it should not be liable for any defense costs incurred by Charter Oak after its filing of a summary judgment motion in the Underlying Action.  *See* Dkt. No. 17-5 at 11-12.  That summary judgment motion was dismissed as untimely.  Erie reasons that, had the "motion been heard on the merits, it may have been granted, which would have ended the defense costs for this case" and, therefore, Charter Oak "should seek redress against its counsel for those fees, and not hold [Erie] responsible for conduct that was outside of its control."  *Id.* at 12.  As Charter Oak argues, Erie's claim that individual aspects of legal work must be successful in order to be covered by an insurer is wholly unsupported.

Accordingly, the Court holds that Erie must fully reimburse Charter Oak for all defense costs it has incurred in representing M+W in the Underlying Action, including pursuit of M+W's cross claim against Arrow.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Charter Oak's motion for summary judgment (Dkt. No. 16) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Charter Oak's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated:  December 7, 2021
          Albany, New York

Mae A. D'Agostino
U.S. District Judge

11